**Not for Publication**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JNESO DISTRICT COUNCIL 1, IUOE, <br><br> Petitioner, <br><br> v. <br><br> SAINT MICHAEL'S MEDICAL CENTER, <br><br> Respondent. | Civil Action No.: 21-13316 (ES) (ESK) <br><br> OPINION |

**SALAS, DISTRICT JUDGE**

Before the Court is the motion to confirm an arbitration award of Petitioner JNESO District Council 1, IUOE. (D.E. No. 2). Opposing the motion is Respondent Prime Healthcare Services – St. Michael's, LLC d/b/a St. Michael's Medical Center. (D.E. No. 11 ("Opp.")).[1] Having considered the parties' submissions, the Court decides the motion without oral argument. Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, the motion is DENIED in part and GRANTED in part.

**I.  BACKGROUND**

Petitioner is a labor organization within the meaning of Section 2(5) of the Labor Management Relations Act, 29 U.S.C. § 152(5). (D.E. No. 1, Petition to Confirm Arbitration Award & Entry of Judgment ("Pet.") ¶ 2). On May 5, 2019, Petitioner and Respondent executed a Collective Bargaining Agreement ("CBA") covering the period of execution through May 4, 2022. (Pet. ¶ 5 & Exhibit A, CBA). Pursuant to the CBA, in the interest of providing a safe

---

[1]  Respondent states that it was "improperly pled as St. Michael's Medical Center." (Opp. at 1).

1

environment, Respondent must provide employees represented by Petitioner with "shuttle services or an escort" from Saint Michael's Medical Center to an offsite employee parking lot. (CBA Art. 36 § 5). Respondent must also, "[u]pon request, . . . provide a safety escort for employees entering or leaving the hospital at night (from dusk to dawn)." (*Id.* § 4(b)).

Prior to the COVID-19 pandemic in March 2020, Respondent provided employees both a shuttle service and escorts to and from an offsite parking lot, located approximately 300 yards from the hospital, during the morning, afternoon, and late-night hours. (Opp. at 2; Pet. ¶ 1, Exhibit B, Opinion & Award ("Award") at 2; D.E. No. 11-1, Declaration of Alan I. Model, Esq. ("Model Dec.") ¶ 5). After the onset of the COVID-19 pandemic, however, Respondent stopped operating the shuttle except for limited-capacity late-night services due to concerns about cleaning the shuttle between runs. (Opp. at 2; Award at 2 & 4).

On August 13, 2020, Petitioner filed a grievance alleging breach of the CBA and initiated arbitration. (Pet. ¶ 8; Opp. at 2). Petitioner took the position, according to the Arbitrator, that Respondent must "reinstate the shuttle service during the morning and afternoon while observing COVID capacity and cleanliness requirements *or* that escorts be consistently available to all employees between the Hospital entrance and the off-site employee parking lot entrance." (Award at 8 (emphasis added)). Meanwhile, Respondent took the position that "the CBA does not require [Respondent] to provide shuttle services and an escort," and that "there is no CBA violation since [Respondent] has provided escort service to and from the parking lot since the morning and afternoon shuttle services ceased." (*Id.* at 8–9).

A hearing took place on February 10, 2021, where both parties presented witnesses and evidence. (*Id.* at 3). The human resources director of the hospital testified, according to the Arbitrator, that she attended the bargaining sessions for the current CBA, during which Petitioner

2

proposed that Respondent "solely provide shuttle service to address the safety concerns," prompting Respondent to propose adding the language, "or an escort," to the CBA. (*Id.* at 7). Testimony further indicated that after shuttle services stopped, Respondent did not provide escorts to employees who requested them. (*Id.* at 5–6). For example, one employee testified, the Arbitrator explained, that after the shuttle services stopped, "she requested an escort, but none was available, and . . . she walked to the parking lot alone." (*Id.* at 6).

On May 6, 2021, the Arbitrator rendered an Award. The Arbitrator found that "the unrefuted evidence established that requests for escorts ha[d] been denied" and hospital management was aware escorts were denied. (*Id.* at 10). The Arbitrator ruled in favor of Petitioner, determining that Respondent violated the collective bargaining agreement by "fail[ing] to consistently provide employees either shuttle services or an escort to and from the off-site employee parking lot as mandated by the CBA." (*Id.*). The Arbitrator ordered Respondent to "resume the prior shuttle services schedule to the off-site employee parking lot and adhere to COVID capacity and cleaning requirements, or to provide *equivalent* escort services." (*Id.* at 11 (emphasis added)). The Award also provides that "[t]he Arbitrator will retain jurisdiction to resolve any dispute that may arise in the implementation of this Award." (*Id.*).

Respondent has since engaged "on-foot escort services to and from the off-site parking lot for the Union employees who request it, and also has security vehicles available to the officers that may be used for rides, if needed." (Model Dec. ¶ 5). By letter dated May 28, 2021, Petitioner advised the Arbitrator that Respondent had failed to comply with the Award by solely providing security personnel to *walk* employees to and from the parking lot and failing to resume shuttle services or an *equivalent* escort. (*Id.* ¶ 3, Exhibit A at 6–7 (ECF pagination)). By letter dated June 8, 2021, Respondent disputed that it failed to comply with the Award, explaining that it continues

3

to provide escort services as required by the CBA and that Petitioner seeks "to have the Arbitrator go beyond the issuance of the Opinion and Award and rewrite the CBA" by effectively seeking a ruling "that Article 36, Section 5 requires [Respondent] use vehicles for escorts." (*Id.* ¶ 6, Exhibit B at 1).

On July 2, 2021, Petitioner filed the Petition, seeking an order confirming the Award, as well as costs and attorney's fees. (Pet. at 3–4). Petitioner simultaneously filed the instant motion, relying on the Petition in lieu of separate briefing. (D.E. No. 2 at 2 (ECF pagination)).

On July 8, 2021, while the motion was pending, the Arbitrator held a telephone conference with the parties in response to their respective letters. (Model Dec. ¶ 8). The parties have competing versions of the telephone conference. According to Petitioner, Petitioner explained to the Arbitrator its understanding that "equivalent escort services" required a vehicle, and the Arbitrator "affirmed Petitioner's understanding of her Award," explaining that the "ruling was based in the fact that the word 'escort' is used in two places in Article 36," and therefore the Arbitrator "interpreted the word 'escort' in Article 36 Section 5 to include vehicles as well." (D.E. No. 13 ("Reply") at 5–6). In contrast, according to Respondent, the Arbitrator "denied [Petitioner's] request to find [Respondent] . . . in violation of her Award. She further indicated that her Award did not need any explanation and declined to supplement her Award orally or in writing." (Model Dec. ¶ 8).

On August 2, 2021, Respondent opposed the motion, arguing that Petitioner "asks this Court to confirm its interpretation of the Award under the guise of adjudicating [Respondent's] compliance with the Award." (Opp. at 4). Petitioner filed its reply on August 31, 2021.

## II. LEGAL STANDARD

Courts have very limited power to review a labor arbitration award by an arbitrator appointed pursuant to a collective bargaining agreement. *Stroehmann Bakeries, Inc. v. Loc. 776, Int'l Bhd. of Teamsters*, 969 F.2d 1436, 1441 (3d Cir. 1992). "Full-blown judicial review" of an arbitration decision would frustrate the bargain of the parties for an arbitrator's construction of their agreement. *Id.* The Federal Arbitration Act affords courts three "mechanisms for enforcing arbitration awards: a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it." *Hall St. Assocs. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008). Under Section 9 of the Act, the Court "must" confirm an arbitration award "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9.

"There is a strong presumption under the Federal Arbitration Act in favor of enforcing arbitration awards." *Brentwood Med. Assocs. v. United Mine Workers of America*, 396 F.3d 237, 241 (3d Cir. 2005) (citation omitted). The "ability of a court to vacate an arbitration award is extremely limited . . ." *Jones v. PPG Indus., Inc.*, 393 F. App'x. 869, 870 (3d Cir. 2010). Section 10(a) allows a federal district court to vacate an arbitration award upon the application of any party under the following instances:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1)–(4).  Respondent appears to oppose the motion under Section 10(a)(4).  (*See* Opp. at 5).

"[R]eview under § 10 focuses on misconduct rather than mistake." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350–51 (2011).  In order to vacate an arbitration award, the opposing party "must clear a high hurdle." *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662, 671 (2010).  "It is not enough for petitioners to show that the panel committed an error—or even a serious error." *Id.*  "It is only when [an] arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice' that his decision may be unenforceable." *Id.* (alterations in original) (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001)).

An arbitrator exceeds his or her authority by deciding an issue "not submitted to him [or her], grant[ing] relief in a form that cannot be rationally derived from the parties' agreement and submissions, or issu[ing] an award that is so completely irrational that it lacks support altogether." *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 219–20 (3d Cir. 2012).  When the arbitrator makes a good faith attempt to interpret the parties' agreement, "even serious errors of law or fact will not subject his award to vacatur." *Id.* at 220; *see also Brentwood Med. Assocs.*, 396 F.3d at 243.  Indeed, a court "may not overrule an arbitrator simply because [it] disagree[s]." *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account*, 618 F.3d 277, 295 (3d Cir. 2010) (quoting *United Transp. Union Loc. 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379 (3d Cir. 1995)).  Rather, "[t]here must be absolutely no support at all in the record justifying the arbitrator's determinations for a court to deny enforcement of an award." *Id.* at 295–96 (quoting

*United Transp. Union Loc. 1589*, 51 F.3d at 379). "[A]s long as the arbitrator's award is drawn from the essence of the collective bargaining agreement, a court may not vacate it even if the court finds the basis for it to be ambiguous or disagrees with its conclusions under the law." *Stroehmann Bakeries, Inc.*, 969 F.2d at 1441.

Generally, once an arbitrator renders a decision, "it becomes *functus officio* and lacks any power to reexamine that decision." *Colonial Penn Ins. Co. v. Omaha Indem. Co.*, 943 F.2d 327, 331 (3d Cir. 1991). When the remedy awarded by the arbitrator is ambiguous, a remand for clarification of the intended meaning may be appropriate. *Id.* at 333–34 ("[F]or example, if an arbitration award directed the transfer of real property, and the district court could ascertain that such property was no longer in the possession of the party directed to transfer it, the remedy would be unenforceable and hence ambiguous."). Remand, however, is a disfavored procedure. *See, e.g.*, *Washington-Baltimore Newspaper Guild, Loc. 35 v. Washington Post Co.*, 442 F.2d 1234, 1238 (D.C. Cir. 1971) (noting potential for remand to "undercut the finality and therefore the entire usefulness of arbitration as an expeditious and generally fair method of settling disputes").

### III. DISCUSSION

#### A. Whether the Arbitrator Exceeded her Authority

Respondent argues that, if "the term 'equivalent' changes [Respondent]'s obligation under the CBA," then the Arbitrator exceeded her authority by effectively rewriting the CBA. (Opp. at 5–6 (citing *Armstrong Cty. Mem'l Hosp. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*, 419 F. App'x 217, 222 (3d Cir. 2011); *Monongahela Valley Hosp. Inc. v. United Steel Paper & Forestry Rubber Mfg. Allied Indus. & Serv. Workers Int'l Union AFL-CIO CLC*, 946 F.3d 195, 201 (3d Cir. 2019))).

In *Armstrong*, the collective bargaining agreement between the hospital and union member employees provided the hospital with the right to establish reasonable policies and procedures. 419 F. App'x at 219.  The union initiated arbitration when the hospital implemented a no-smoking policy.  *Id.* at 218.  The arbitrator issued an opinion and award in favor of the union, finding "employees had come to expect they would have a specific location to smoke, and in my considered opinion, this expectation rose to the level of a protected local working condition." *Id.* at 219.  The district court vacated the award, noting the arbitrator's "manifest disregard" of the collective bargaining agreement, which provided that management rights of the hospital "are not limited by existing or 'prior practices' or 'side agreements.'" *Id.* at 220–21.  The Third Circuit affirmed vacatur, holding "the arbitrator's opinion effectively rewrote the parties' agreement" by implementing an interpretation "directly contrary to [its] plain meaning." *Id.* at 222–23.

In *Monongahela Valley*, the collective bargaining agreement between the hospital and union member employees included a vacation time policy.  946 F.3d at 197.  Specifically, the policy provided: "[v]acation will, so far as possible, be granted at times most desired by employees; but the final right to allow vacation periods, and the right to change vacation periods[,] is exclusively reserved to the Hospital." *Id.* (alteration in original).  Arbitration ensued after the hospital denied a union member employee her requested vacation time. *Id.* at 198.  The arbitrator found in favor of the employee, ruling that "notwithstanding the Hospital's reservation of exclusive rights," the policy precluded the hospital from denying senior employees in the bargaining unit their desired vacation absent an "operating need." *Id.*  The district court vacated the award for "manifest disregard" of the CBA's plain language and the clear intent of the parties. *Id.* at 199.  The Third Circuit affirmed, holding that the arbitrator exceeded his authority by "inserting the 'operating need' restriction." *Id.* at 200–01.

8

*Armstrong* and *Monongahela Valley* reflect situations where the arbitrator effectively rewrote the parties' agreements, and the Third Circuit affirmed vacating the arbitrators' decisions on that basis. Here, however, the Court need not decide whether the Award violates *Armstrong* and *Monongahela Valley* because, when read in context, the Award does not effectively re-write the agreement. Said another way, the Court agrees with Respondent's interpretation of the Award. The Award unambiguously states, "[t]he Hospital's argument that the clear language of the CBA requires shuttle services or an escort *but not both* is correct." (Award at 10 (emphasis added)). The Arbitrator found that Respondent was not absolved from "fulfilling its responsibility to provide a safe environment for the employees with *either shuttle services or an escort*," and "the evidence clearly show[ed] that the Hospital has failed to consistently provide employees *either shuttle services or an escort* to and from the off-site employee parking lot as mandated by the CBA." (*Id.* (emphases added)). Moreover, testimony before the Arbitrator regarding the bargaining sessions for the CBA showed that Respondent proposed adding the language "or an escort" in response to Petitioner's request that Respondent "solely provide shuttle service." (*Id.* at 7). Accordingly, the Award makes clear that shuttle services and escorts are different, rather than equivalents. Further, during the arbitration hearing, one employee testified that she "*walked* to the parking lot *alone*" and that, even before the pandemic "guards d[id] not routinely drive employees to the off-site parking lot." (*Id.* at 6). This testimony reflects what the Arbitrator meant by the word "equivalent"—that Respondent must provide an escort service equivalent to that provided before the pandemic. (*Id.* at 10).

Because the Arbitrator's use of the word "equivalent" does not create an obligation to provide vehicular escorts, the Court does not decide whether such a ruling would fail *Armstrong* and *Monongahela Valley* under the deferential standard of review for labor arbitration awards. As

properly understood, the Court declines to find that the Arbitrator exceeded her authority and confirms the Award.

### B. Whether Confirmation Adjudicates Compliance with the Award

Respondent next argues that Petitioner asks this Court to confirm its interpretation of the Award under the guise of adjudicating Respondent's compliance with the Award. (Opp. at 4 &, 6–9). In response, Petitioner argues that the Arbitrator affirmed its reading of the Award during the telephone conference of July 8, 2021, without citation to supporting evidence. (Reply at 5–6).

The Court does not find that the Award is sufficiently ambiguous with respect to the remedy awarded to bring this situation within the limited circumstances warranting remand to the Arbitrator.[2] *See, e.g.*, *Colonial Penn*, 943 F.2d. at 335; *Hyle v. Doctor's Assocs., Inc.*, 198 F.3d 368, 371 (2d Cir. 1999) (noting remand for clarification of ambiguity would be proper where award directed damages to be paid by respondent against whom petitioner was not seeking damages); *Norwin Sch. Bus Drivers Ass'n v. First Student, Inc.*, No. 16-666, 2016 WL 4701487, at *7 (W.D. Pa. Sept. 8, 2016) (holding remand for clarification of "latent ambiguity" was proper where award reinstating bus driver failed to address whether prerequisites provided in applicable regulations were required, such as return-to-work drug test).

As previously discussed, the Court agrees with Respondent's interpretation of the Award. *See* Section III.A., *supra*. Because the Court does not confirm the Award pursuant to Petitioner's interpretation, and the Arbitrator decided the issue of Respondent's compliance in accordance with the CBA, the Court need not consider whether Respondent has failed to comply with the Award. (*See* Pet. ¶¶ 7 & 15).

---

2   Nor does either party argue remand is warranted.

10

### C. Costs

Petitioner also seeks an award of costs and attorney's fees. (*Id.* at 4).[3] The Court may award costs and attorney's fees against a party who unjustifiably refuses to abide by an arbitrator's award. *See, e.g.*, *Fischer v. CGA Computer Assocs., Inc.*, 612 F. Supp. 1038, 1042 (S.D.N.Y. 1985). However, such circumstances are not present. Accordingly, Petitioner's request for costs and attorney's fees is denied.

### IV. CONCLUSION

For the reasons set forth above, Petitioner's request for costs and attorney's fees is DENIED, and the motion to confirm arbitration is otherwise GRANTED.

Date: April 1, 2022

*/s/ Esther Salas*
**Hon. Esther Salas, U.S.D.J.**

---

[3] The Petition seeks costs and attorney's fees without citation to legal authority. (*See id.*).

11